OPINION
{¶ 1} Defendant-appellant Mary Jean Vaught appeals her conviction for aggravated robbery with a firearm specification entered by the Stark County Court of Common Pleas, following a jury's verdict of guilty. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} At approximately 9:00 a.m. on December 30, 2001, three workers arrived at Church's Chicken to get the store ready for opening at 11:00 a.m. Charolette Starcher was the shift manager. Karla Moore and Brendan McGinnis were the other two employees present.
 {¶ 3} Between 10:00 and 10:15 a.m., Moore saw a man and woman enter the store. Moore approached them to advise them the store did not open until 11:00 a.m., but the woman whispered "shhh" and pointed to a gun the man was carrying. The woman pulled Moore aside and led her into the store office where the woman had Moore lie on the floor. Moore begged the woman not to kill her.
 {¶ 4} The man approached McGinnis who was in the store's kitchen. McGinnis saw a .9mm, black, pull-back gun. The man had the woman take McGinnis to the store office.
 {¶ 5} Starcher was in the office. The man took a phone from Starcher's hand and told Starcher to get on the floor and open the safe. The safe was located in the office underneath a desk.
 {¶ 6} A coin purse was on the floor inside the safe. The safe also contained $500 in bills, in a magnetic holder located in the inner top of the safe, in such a way as to disguise the magnetic holder.
 {¶ 7} Starcher gave the robbers the coin purse, but the man demanded the rest of the money. Starcher then retrieved the metal, magnetic holder and gave the man the rest of the money.
 {¶ 8} The robbers then placed Starcher, Moore and McGinnis in the cooler and stacked cases in front of it. Shortly thereafter, Moore escaped from the cooler and called 911.
 {¶ 9} Officers Adam and Riley responded to the call. The officers had picked up a suspect whose clothing met the male robber's description and transported him to the store. Starcher, Moore and McGinnis told the officers the man was not the robber.
 {¶ 10} The officers then spoke with Homer Wright, the assistant store manager, about current or past employees who had knowledge of the safe. Wright advised the officers during the past two months, appellant had come into the store on several occasions to apply for a position. Wright knew appellant and a man named Turner before the robbery. Wright stated whenever he saw either appellant or Turner, the other was usually there too. Wright testified all past and present employees would have known the location of the safe.
 {¶ 11} Det. Ketchen put together a photo array including appellant and Turner. Starcher could not pick out a suspect from the array despite looking right at the woman during the robbery. Starcher admitted she was pretty scared. Moore positively identified appellant and Turner as the robbers, and McGinnis likewise identified appellant and Turner as the robbers.
 {¶ 12} Appellant and Turner were arrested on warrants for robbery. Appellant was indicted on January 23, 2002, for the aforementioned charges and a joint jury trial was conducted for both appellant and Turner.
 {¶ 13} At trial, McGinnis positively identified appellant, but could not identify Turner. Moore positively identified both appellant and Turner.[1] No physical evidence was admitted connecting appellant to the robbery.
 {¶ 14} Appellant presented three alibi witnesses at trial. Kathy Turner, co-defendant Turner's sister; Methann Turner, another sister of co-defendant Turner; and Robert Waiters, a friend of co-defendant Turner.
 {¶ 15} After deliberation, the jury returned a verdict of guilty as charged. Appellant was sentenced accordingly.
 {¶ 16} Appellant appeals her conviction, assigning as error:
 {¶ 17} "I. The jury verdict finding appellant guilty of aggravated robbery with a firearm specification was against the manifest weight of the evidence in violation of the due process clause of TheFourteenth Amendment to the United States Constitution."
 I. {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 19} Appellant maintains the jury clearly lost its way, resulting in a miscarriage of justice, essentially because of the lack of credibility in the identification of appellant as one of the robbers. Based upon the facts noted supra, we disagree. We find there was competent, credible evidence to support the jury's verdict appellant was one of the robbers.
 {¶ 20} Appellant's sole assignment of error is overruled.
 {¶ 21} The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Edwards, J. and Boggins, J. concur.
topic: manifest weight.
[1] Moore was later fired because she was suspected of taking money from Church's Chicken.